IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE LORENZO LORENZO,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 13-1516 (MEL)

**OPINION AND ORDER**

    **I.**    **PROCEDURAL AND FACTUAL BACKGROUND**

José Lorenzo Lorenzo ("plaintiff" or "claimant") was born on July 9, 1961, and has a high school education (Tr. 23.) Prior to his initial application for Social Security disability benefits, plaintiff worked as a mechanic in the garage he owned. (Tr. 32.) On August 27, 2010, plaintiff filed an application for Social Security disability insurance benefits, alleging disability on the basis of a left hand thumb open wound reduction and internal fixation, left hand thumb pain, lumbar spine multilevel degenerative disc disease, lumbosacral radiculopathy, and depression. (Tr. 16; 32-33.) The alleged onset date of his disability was February 1, 2008. (Tr. 13.) The date last insured was March 31, 2011. Id. Claimant's application was initially denied on February 18, 2011, and upon reconsideration on August 15, 2011. Id. He requested a hearing before an Administrative Law Judge ("ALJ"). Id. He waived his right to appear and testify at the hearing held on June 13, 2012, but he was represented by counsel at the hearing and a vocational expert ("VE") testified by telephone. Id. The ALJ rendered a decision on June 27, 2012, finding, at step five of the sequential evaluation process, that plaintiff was not disabled from February 1, 2008 through March 31, 2011. (Tr. 24.) The Appeals Council denied plaintiff's request for

review on April 29, 2013. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On June 28, 2013, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled was not based on substantial evidence. ECF No. 1, ¶ 2, 6. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF No. 11. Plaintiff and the Commissioner have filed supporting memoranda of law. ECF Nos. 16-18.

## II.  STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing past

relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

## III.   RELEVANT MEDICAL EVIDENCE

### A.   Physical

On February 1, 2008, plaintiff fractured his left thumb first metacarpal as a result of being struck with a machete. (Tr. 75, 158.) On February 4, 2008, plaintiff underwent open reduction and internal fixation surgeries to repair the fracture. (Tr. 157, 212.) An x-ray study of the left hand dated February 26, 2008 showed a healing fracture of the first metacarpal with fixating pins in place. (Tr. 121.) A second x-ray study dated April 21, 2008 revealed a comminuted fracture first metacarpal shaft with no other fracture or dislocation. (Tr. 447-448.) A third x-ray study dated June 6, 2008, showed a first metacarpal shaft fracture with preserved joint spaces. (Tr. 446.)

---

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

On September 19, 2008, consulting physician Dr. C. Pérez[2] reported: (1) an improved range of motion in left hand fingers 2-4; (2) limited range of motion in the left hand thumb due to significant surgical scars; (3) increased range of motion at the metacarpal joint of the left hand; and, (4) grip strength of 85 pounds at both hands, pinch strength of 6 pounds with the left hand and 24 pounds with the right hand. (Tr. 65) Dr. C. Pérez assessed that claimant's left thumb was "still very limited" and suspected that "there [was] no muscular nerve innervation in the thumb area of the left hand. Id.

On May 20, 2010, Dr. Luis E. Prats ("Dr. Prats"), plaintiff's treating physician from March 6, 2008 through May 3, 2012, reported treatment for post partial avulsion of left thumb, lumbalgia, insomnia, depression, anxiety and multilevel discogenic disease. (Tr. 88.) Dr. Prats noted that plaintiff had decreased ability of extension of left hand thumb, low back pain, anxiousness, depression and lumbar spondylosis. Id. Specifically, he understood that plaintiff could: (1) sit/stand/walk for less than 2 hours in an 8-hour workday; (2) walk every 30 minutes for 10 minutes during an 8-hour workday; and (3) shift positions at will and with unscheduled breaks every 8 to 30 minutes lasting for about 15 minutes. (Tr. 89.) In addition, he indicated plaintiff needed an assistive device, like a cane, while engaging in occasional standing or walking. (Tr. 90.) Furthermore, he found that plaintiff could: (1) occasionally lift/carry less than 10 pounds; (2) could occasionally turn head right or left, rarely look down turn and twist objects with both hands; (3) frequently perform fine manipulation with right hand and rarely with left hand; (4) rarely perform manipulations with left hand; and (5) frequently reach, including overhead with both arms. Id.

---

[2] Neither Dr. C. Pérez's treatment notes (Tr. 64-81) nor the ALJ's decision (Tr. 15-24.) reveal Dr. C. Pérez's first name.

On August 11, 2010,[3] plaintiff completed a Function Report from the Social Security Administration. (Tr. 51-58.) Plaintiff indicated that he: (1) had no problem with personal care; (2) went outside every day; (3) could go out by himself; (4) drove a car; (5) went shopping for groceries; and, (6) went regularly to his relatives' house. (Tr. 52-55.) In addition, claimant indicated that his back pain and depression affected his ability to: lift, squat, bend, stand, walk, sit, climb stairs, memorize, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (Tr. 56.) However, plaintiff did not mention the need to use assistive devices, such as crutches, walkers, wheelchairs, canes, braces, or artificial limbs, in order to walk. (Tr. 57.)

On December 28, 2010, Dr. Alfredo Pérez performed a neurological evaluation on a consultative basis for the Disability Determination Program. (Tr. 569-578.) Plaintiff alleged lower back pain radiating to his left leg with numbness and indicated that he needed to change position frequently. (Tr. 569.) Dr. Alfredo Pérez found plaintiff to be alert, active, and oriented in time, place, and person. (Tr. 570.) In addition, he made no indication of agnosia, aphasia nor apraxia. Id. Furthermore, the consultant physician stated plaintiff had good coordination, negative SLR test and negative Babinski, Phallen, Hoffman, and Tinnel tests. (Tr. 571.) Regarding hand functionality, Dr. Alfredo Pérez reported that plaintiff did not present joint pain, tenderness nor swelling, and that plaintiff was able to grip, grasp, pinch, finger tap, button shirt, pick up a coin, and write with both hands. (Tr. 572.) Lastly, he found that: (1) plaintiff's gait was normal; (2) plaintiff had no need for a cane, orthopedic shoes, a shoe lift, crutches, wheelchair, assistive foot orthotic, prosthetic limbs; and (3) no physician had prescribed any assistive device to plaintiff. (Tr. 575.)

---

[3] In his decision (Tr. 22), the ALJ makes reference to this Function Report as dated November 8, 2010; however, the Spanish version (Tr. 378-385) is dated November 8, 2010 (11/8/10), whereas the English certified translation (Tr. 51-58) is dated August 11, 2010 (8/11/10).

On January 12, 2011, consultant internist Dr. Florentino Figueroa ("Dr. Figueroa") completed a physical RFC assessment, based on medical evidence dated April 21, 2008 through December 18, 2010. (Tr. 581-89.) He assessed that claimant could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, engage in unlimited pushing and pulling, and unlimited reaching and feeling. (Tr. 583; 585.) He found that claimant was limited in his ability to frequently engage in handling or fingering with his left hand, due to pain. (Tr. 585.)

B.   **Mental**

On June 4, 2009, plaintiff began psychiatric treatment at the ROVICO Behavioral Care and Treatment program ("ROVICO") under the care of Dr. Ronald Malavé ("Dr. Malavé"), the treating psychiatrist. (Tr. 213-17) Dr. Malavé diagnosed claimant as having a severe recurrent major depressive disorder without psychotic features and mood disorder due to his chronic back pain and herniated discs. (Tr. 217; 561.) As consequence, plaintiff received partial ambulatory hospitalization from September 15, 2009 through September 30, 2009. (Tr. 113-116.) He received partial ambulatory hospitalization, for a second time, from October 7, 2009 through November 2, 2009. (Tr. 109-112.) On November 15, 2010, Dr. Malavé stated that plaintiff showed isolation, psychomotor retardation, depressed mood, depressive and irritable affect and poor attention and concentration. (Tr. 213; 557.) However, he noted that plaintiff seemed to be coherent, relevant, logical, oriented, with preserved memory skills, regular judgment and moderate insight without suicidal or homicidal ideations. (Tr. 215-16; 559-60.)

On November 15, 2010, plaintiff's treating psychiatrist found that he was moderately limited in his: (1) ability to understand and remember very short and simple instructions; (2) ability to make simple work-related decisions; (3) ability to ask simple questions or request assistance; (4) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (5) ability to be aware of normal hazards and take appropriate

6

precautions. (Tr. 219-22.) He reported that plaintiff was markedly limited in his: (1) ability to remember locations and work-like procedures; (2) ability to carry out very short and simple instructions; (3) ability to sustain an ordinary routine without special supervision; (4) ability to interact appropriately with the general public; (5) ability to respond appropriately to changes in the work setting; (6) ability to travel in unfamiliar places or use public transportation; and (7) ability to set realistic goals or make plans independently of others. Id. Furthermore, Dr. Malavé indicated that claimant was extremely limited in his: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) ability to work in coordination with or proximity to others without being distracted by them; (6) ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods; (7) ability to accept instructions and respond appropriately to criticism from supervisors; and (8) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id.

    On January 24, 2011, Dr. Alberto Rodríguez performed a psychiatric evaluation on a consultative basis for the Disability Determination Program. (Tr. 225.) Dr. Alberto Rodríguez reported restricted affect, depressed mood, ideas of worthlessness, hopelessness and helplessness, poor attention and concentration, average intellectual functioning, adequate memory skills, regular insight, adequate judgment and oriented without suicidal ideations or perceptual disturbances. Id.

Dr. Luis Rodríguez, a consultant psychiatrist, conducted a mental assessment on February 17, 2011, where he recorded conclusions derived from the evidence in plaintiff's medical record. (Tr. 596-615.) Dr. Luis Rodríguez assessed that claimant's memory was preserved and that claimant's allegation of poor memory was not supported by the record and was not credible. (Tr. 613.) He opined that claimant was able to remember and carry out simple instructions and, although he had poor attention and concentration, he could sustain attention for two hour intervals. Id. Dr. Luis Rodríguez also stated that claimant could interact with supervisors and adapt to changes in the work setting. Id. On June 13, 2011, Dr. G. Minola[4] reviewed plaintiff's psychiatric evidence on record and advised to affirm Dr. Luis Rodríguez's opinion. (Tr. 622.)

IV.   ANALYSIS

Plaintiff's primary argument is that the ALJ ignored medical evidence reported by plaintiff's treating physicians, Dr. Prats and Dr. Malavé, in reaching his determination that claimant had the RFC to perform light, unskilled work, not requiring frequent use of his non-dominant, left arm (Tr. 17.). See ECF No. 16. "Generally, the ALJ gives more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments.'" Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (citing 20 C.F.R. § 404.1527(d)(2)). To be given controlling weight, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 Fed.Appx., 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). However, the ALJ is not always required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987);

---

[4] Neither the medical record (Tr. 622.) nor the AlJ's decision (Tr. 15-24.) reveals Dr. G. Minola's first name.

Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)).

### A. Physical RFC Assessment

The ALJ gave good reasons for giving less weight to Dr. Prats' work activity assessment. He found that, besides Dr. Prats' reports, the remainder of plaintiff's medical record did not mention the use of an assistive device for ambulation. (Tr. 19.) The ALJ mentioned that even though the medical evidence documented left hand thumb limitations, there was nothing wrong with plaintiff's ability to grasp, turn or twist objects. Id. Essentially, the ALJ determined that Dr. Prats' opinion was inconsistent with other substantial evidence in the record; thus, he gave it "less weight." For example, on August 11, 2010, plaintiff reported that he did not use assistive devices to walk like crutches, walkers, wheelchairs, canes, braces, or artificial limbs. (Tr. 57.) Furthermore, on December 28, 2010, Dr. Alfredo Pérez reported that: (1) plaintiff's gait was normal; (2) plaintiff had no need for cane, orthopedic shoes, shoe lift, crutches, wheelchair, assistive foot orthotic, or prosthetic limbs; and, (3) no physician had prescribed any assistive device to plaintiff. (Tr. 575.) Dr. Alfredo Pérez also noted that plaintiff did not present joint pain, tenderness nor swelling, and that plaintiff was able to grip, grasp, pinch, finger tap, button shirt, pick up a coin, and write with both hands. (Tr. 572.)

In reaching the determination that claimant could perform light, unskilled work with a limitation on his ability to use his left arm the ALJ also gave "great weight" to the RFC assessment completed by Dr. Figueroa. (Tr. 21.) Light work includes jobs that require "a good deal of walking or standing" and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying or objects weighing up to 10 pounds," which is consistent with

9

Dr. Figueroa's findings regarding claimant's capabilities. 20 C.F.R. § 404.1567(b). While Dr. Figueroa noted that claimant was limited in his ability to use his left hand on a frequent basis, the ALJ incorporated this limitation into his RFC assessment. Furthermore, in reaching this assessment the ALJ considered that "claimant is a right hand dominant person." (Tr. 22.) The opinions of Dr. Alfredo Pérez and Dr. Figueroa constitute substantial evidence in support of the ALJ's physical RFC assessment. The ALJ determined that the record contained substantial evidence that was inconsistent with Dr. Prats' findings; therefore, he did not err in declining to give controlling weight to Dr. Prat's opinion.

### B. Mental RFC Assessment

The ALJ also provided good reasons for not giving controlling weight to Dr. Malavé's opinion as plaintiff's treating psychiatrist and for subsequently determining that claimant retained the RFC to perform unskilled work. Unskilled work requires the ability:

> to understand, carry out, and remember, simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine setting. A *substantial loss* of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15 (emphasis added). The ALJ indicated that Dr. Malavé's report that claimant "was moderately limited in his ability to understand and remember very short and simple instructions, make simple work related decisions, ask simple question or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, [and] be aware of normal hazards" was compatible with the determination that claimant retained the capacity to perform unskilled work. (Tr. 21.) Indeed, many of these findings relate to the abilities necessary to perform unskilled work, and moderate limitations in the abilities to meet these basic demands do not preclude a finding that a social security claimant retains the mental capacity to perform unskilled work. See, e.g., Falcón-Cartagena v. Comm'r of Soc. Sec., 21 Fed.App. 11, 14, 2001

WL 1263658, at *2 (1st Cir. 2001) (unpublished opinion) (concluding that the claimant's mental impairments did not severely limit the potential occupational base where the "claimant was at most moderately limited in areas of functioning required for unskilled work"); Concepción-Morales v. Comm'r of Soc. Sec., 81 F.3d 147, 1996 WL 141786, at *1 (1st Cir. 1996) (unpublished opinion) (affirming ALJ's finding that the claimant could perform the full range of unskilled work where the "evidence show[ed] that [the] claimant had at most moderate limitations in his ability [to] meet the basic demands of unskilled work.").

While the moderate limitations found by Dr. Malavé are consistent with the ALJ's finding the claimant could perform unskilled work, Dr. Malavé also found that claimant possessed marked limitations in other basic abilities required for unskilled work, such as the ability to carry out short and simple instructions, to sustain an ordinary routine without special supervision, and to respond appropriately to changes in the work setting. Rather than accept these findings, the ALJ gave great weight to the mental RFC assessment prepared Dr. Luis Rodríguez on February 17, 2011 and affirmed by Dr. Minola on June 13, 2011. (Tr. 22.) Indeed, Dr. Luis Rodríguez's mental RFC assessment that claimant's memory was preserved, that he retained the ability to remember and carry out simple instructions, could sustain attention for two hour intervals, and could interact with supervisors and adapt to changes in the work setting is compatible with the ALJ's conclusion that claimant could perform unskilled work.

In choosing to favor Dr. Luis Rodríguez's assessment of claimant's mental RFC over Dr. Malavé's, the ALJ took into account a Function Report completed by claimant on August 11, 2010 (Tr. 51-58), which he found to be consistent with Dr. Luis Rodríguez's opinion and with the conclusion that claimant could meet the basic demands of unskilled work. For example, while Dr. Malavé found that plaintiff exhibited psychomotor retardation (Tr. 215.), plaintiff

indicated that he took care of his personal hygiene without any problems. (Tr. 52.) Although plaintiff indicated that he did not know how to cook, he nevertheless stated that he was able to feed himself and that he could follow written instructions as those provided by a recipe, providing a basis for the ALJ to discredit Dr. Malavé's finding that claimant had a marked limitation in his ability to carry out short and simple instructions. (Tr. 51; 53; 56.) Moreover, while Dr. Malavé reported that plaintiff suffered from isolation, the ALJ took in account the fact that claimant reported he went out every day, went grocery shopping every 2 to 3 days (without reporting phobia incidents), and regularly went to his relatives house. Additionally, the fact that claimant regularly engaged in such activities, combined with the fact that he took care of his personal hygiene without problems, provided a basis for the ALJ to reject Dr. Malavé's restrictive finding regarding claimant's ability to sustain a routine without supervision. Finally, although Dr. Malavé determined that claimant was markedly limited in his ability to respond to changes in the work setting, in making his RFC assessment the ALJ reasoned "that even minimal operation of a motor vehicle requires substantial attention and concentration, understanding, remembering and carrying out of complex functions, and substantial exercise of independent judgment."[5] (Tr. 22.)

Overall, in reaching his determination as to claimant's mental RFC, the ALJ found that the activities claimant performed on a regular basis "sp[oke] . . . loudly in revealing the claimant's capabilities" and assessed that these capabilities were consistent with the requirements of unskilled work. The ALJ concluded that Dr. Malavé's more-restrictive findings were inconsistent with claimant's expressions as to his abilities, which constitutes a good reason for declining to give Dr. Malavé's opinion controlling weight. (Tr. 22.) Thus, based on his

---

[5] Notably, even Dr. Malavé found that plaintiff had preserved immediate, recent, and remote memory and "regular" judgment. (Tr. 216-517.)

12

reliance on plaintiff's Function Report, the ALJ did not err in his decision not to give controlling weight to Dr. Malavé's opinion.

### C. Hypothetical Question to the VE

Because the ALJ did not ignore substantial evidence in reaching his determination as to plaintiff's RFC, plaintiff's second argument—that the ALJ erred in crafting a hypothetical question to the VE based on that RFC determination—also fails. See ECF No. 16. "[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Arocho v. Secretary of Health and Human Services, 670 F.2d 374 (1st Cir. 1982). The ALJ asked the VE to identify the number of jobs that exist in the economy for

> [a] person, young in 2008, who is currently approximating the advanced age, two years of university and a vocational profile that is medium and is skilled, and had the following functional limitations: he cannot perform heavy or medium work. He can only perform light work, non-skilled, that would not require the frequent use of the non-dominant arm and hand, the left one.

(Tr. 35-36.) As plaintiff contends, the hypothetical question posed by the ALJ does not reflect each finding reported by the treating physicians; however, hypothetical questions need only "reasonably incorporate the disabilities recognized by the ALJ." Camacho v. Astrue, 978 F.Supp.2d 116, 122 (D.P.R. 2013) (citing Velez-Pantoja v. Astrue, 786 F.Supp.2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994))). The ALJ gave significant weight to state agency consultants' determinations and claimant's Function Report, which were compatible with his own determination that claimant could perform unskilled, light work that does not require frequent use of his left hand and arm. (Tr. 22.) In turn, the ALJ incorporated these limitations into the hypothetical question that he posed to the VE.

V.    **CONCLUSION**

To be given controlling weight, a treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones, 477 Fed.Appx., at 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ did not err in not giving controlling weight to Dr. Prats' physical assessments, as he provided good reasons for doing so. There was substantial evidence that showed plaintiff's gait was normal and that he did not require an assistive device, undermining Dr. Prat's opinion. Additionally, the ALJ incorporated a limitation on plaintiff's frequent use of his left, non-dominant hand and arm into his physical RFC assessment. Similarly, the ALJ provided good reasons as to why Dr. Malavé's mental assessments did not merit controlling weight. First, the ALJ noted that some of his findings were in fact compatible with his RFC determination of unskilled work. While some of Dr. Malavé's conclusions were in tension with the ALJ's RFC assessment, the ALJ relied on the plaintiff's Function Report, which contained inconsistencies with Dr. Malavé's opinion and substantiated the determination that claimant could perform unskilled work. The ALJ based the hypothetical questions posed to the VE on his RFC determination and did not err in omitting some of the alleged impairments reported by the treating physicians, as he gave good reasons for rejecting such limitations.

Based on the foregoing analysis, the Commissioner's decision is hereby **AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of March, 2015.

s/Marcos E. López<br>
U.S. Magistrate Judge